1
2
3
4
5
6                   UNITED STATES DISTRICT COURT

7                  EASTERN DISTRICT OF CALIFORNIA

8

9   PAC-WEST TELECOMM, INC.,        )    1:10-cv-0968 OWW GSA
                                    )
10              Plaintiff,          )    SCHEDULING CONFERENCE ORDER
                                    )
11      v.                          )    Mid-Discovery Joint Status
                                    )    Report Due: 2/14/11
12  AT&T COMMUNICATIONS OF          )
    CALIFORNIA, INC. and AT&T CORP.,)    Mid-Discovery Status
13                                  )    Hearing: 2/18/11 8:15 Ctrm.
                Defendants.         )    3
14                                  )
    _____)    Discovery Cut-Off: 7/1/11
15                                  )
    AND RELATED COUNTERCLAIM        )    Non-Dispositive Motion
16  _____)    Filing Deadline: 7/20/11

17                                       Non-Dispositive Motion
                                         Hearing Date: 8/26/11 9:00
18                                       Ctrm. 10

19                                       Dispositive Motion Filing
                                         Deadline: 8/1/11
20
                                         Dispositive Motion Hearing
21                                       Date: 9/26/11 10:00 Ctrm. 3

22                                       Settlement Conference Date:
                                         7/5/11 10:00 Ctrm. 10
23
                                         Pre-Trial Conference Date:
24                                       10/31/11 11:00 Ctrm. 3

25                                       Trial Date: 12/13/11 9:00
                                         Ctrm. 3 (CT-5 days)
26

27

28  ///

                                   1

1  I.    Date of Scheduling Conference.

2        October 7, 2010.

3  II.   Appearances Of Counsel.

4        Arent Fox Kintner Plotkin and Kahn by Michael B. Hazzard,

5  Esq., appeared on behalf of Plaintiff.

6        Sidley Austin LLP by Lee L. Auerbach, Esq., David Lawson,

7  Esq., and Brendan J. McMurrer, Esq., appeared on behalf of

8  Defendant.

9  III.  Summary of Pleadings.

10        A.    Plaintiff/Counterdefendant's Brief Statement of the

11  Case.

12              1.    Pac-West filed its complaint in response to AT&T's

13  unlawful refusal to pay Pac-West for the work Pac-West has

14  performed and continues to perform as an input to AT&T's

15  provision of long-distance calling services to AT&T's customers.

16              2.    Both parties are telecommunications carriers.  By

17  way of background, there are two types of telecommunications

18  carriers at issue in this case: local exchange carriers ("LECs")

19  and interexchange carriers ("IXCs"), also known as long-distance

20  carriers.  Under both federal and state regulations, IXCs are

21  required to pay LECs' "access charges" for the input access

22  services the LECs provide in carrying the calls that enable an

23  IXC to offer its for-profit long-distance service.  These access

24  charges are set forth in regulated price lists, known as tariffs,

25  filed with the Federal Communications Commission ("FCC") and

26  state public service commissions.  The FCC has jurisdiction over

27  telecommunications traffic between calling and called parties in

28  different states, while state public service commissions have

2

1  jurisdiction over telecommunications traffic between callers in
2  the same state.

3        3.   Plaintiff/Counterdefendant is a certificated local
4  exchange carrier and has tariffs on file with the FCC and the
5  public service commissions in the states of Arizona, California,
6  Colorado, Idaho, Nevada, Oregon, Texas, Utah, and Washington.
7  These tariffs describe the rates, terms, and conditions under
8  which Pac-West provides its access services to IXCs, AT&T
9  included.   Pac-West has provided AT&T the tariffed services for
10  which it has billed AT&T.   But AT&T now refused to pay Pac-West's
11  lawfully assessed access charges for the work Plaintiff performs
12  for AT&T's benefit.   Prior to April 2010, AT&T paid Pac-West's
13  invoices at Pac-West's tariffed rates, but after April 2010 AT&T
14  ceased paying for all of the services it takes from Pac-West.
15  AT&T has no basis for withholding any of Pac-West's charges.
16  Pac-West therefore seeks an order compelling AT&T to pay the
17  amounts it has withheld from Pac-West since April 2010 and to pay
18  Pac-West's invoices going forward.

19     B.   Defendants/Counterclaimants' Brief Statement of the
20          Case.

21        1.   Pac-West has charged AT&T for tariffed "switched
22  access" services that it did not provide.   It is axiomatic that a
23  carrier cannot lawfully bill or collect tariffed charges unless
24  it has a valid tariff on file and in fact provides those services
25  described in the tariff pursuant to the terms and conditions in
26  the tariff and the governing statutes and rules.

27        2.   There are two primary types of switched access
28  charges that Pac-West has unlawfully assessed on AT&T:

                                3

1  "originating" switched access charges and "terminating" switched

2  access charges.  On the originating side, Pac-West has unlawfully

3  assessed switched access charges on AT&T for calls that did not

4  "originate" from Pac-West's local customers or even in Pac-West's

5  local service territories.  Although discovery will be necessary

6  to determine the precise routing of the traffic at issue, certain

7  of the calls at issue actually originated in countries or states

8  far from Pac-West's networks and were then fraudulently "re-

9  originated" by Pac-West to make it appear as if Pac-West was

10  entitled to collect end office local switching and other switched

11  access charges for such traffic.

12      3.    Some of these calls were originated by parties

13  engaged in unlawful schemes to route enormous volumes of

14  computer-generated "dead air" and "tone-at-interval" calls to

15  AT&T "8YY" customers' call centers (*e.g.*, 1-800, 1-888, and 1-877

16  numbers) for the sole purpose of generating access charge

17  billings that Pac-West would share with the fraudsters.  In other

18  cases Pac-West "re-originated" calls that were actually initiated

19  by customers of wireless and Voice over Internet Protocol

20  ("VoIP") providers.  In each case, Pac-West unlawfully billed and

21  collected charges from AT&T as if Pac-West was itself originating

22  these calls from its own end user customers.

23      4.    Pac-West's switched access charges on the

24  terminating side are unlawful for similar reasons because the

25  traffic at issue did not "terminate" in Pac-West's local service

26  territory or to Pac-West's local customers.  Rather, the calls

27  were merely routed *through* Pac-West facilities to distant

28  locations on other networks - in many cases to foreign countries

1  in connection with schemes to provide "free" or low-cost calling

2  to foreign countries funded by Pac-West's unlawful access charge

3  collections.   Upon information and belief, Pac-West agreed to

4  share its access charge collections with the sponsors of these

5  calling schemes (or other intermediate carriers).

6        5.    Pac-West sent invoices to AT&T containing charges

7  for switched access services that it purportedly provided

8  pursuant to its interstate and intrastate tariffs.  AT&T paid

9  these invoices until April 2010, when it disputed Pac-West's

10 invoices and began withholding payment after discovering Pac-

11 West's unlawful billing practices.  Through its Counterclaims,

12 AT&T is seeking a refund of the unlawful charges that AT&T

13 already has paid, and a declaratory ruling that such charges are

14 unlawful and need not be paid in the future.

15 IV.  Orders Re Amendments To Pleadings.

16       1.    The parties agree that amendments may be filed without

17 leave of court or other requirement of a Rule 15 motion on or

18 before December 24, 2010.  The parties agree that responses to

19 any amended pleadings shall be filed within twenty (20) days

20 after electronic service.

21 V.   Factual Summary.

22     A.   Admitted Facts Which Are Deemed Proven Without Further

23 Proceedings.

24       1.    Plaintiff/Counterdefendant Pac-West Telecomm, Inc.

25 is a corporation incorporated under the laws of the State of

26 California and is a competitive local exchange carrier ("CLEC")

27 that operates primarily in Arizona, California, Colorado, Idaho,

28 Nevada, Oregon, Texas, Utah and Washington.

1          2.     Defendant/Counterclaimant AT&T Communications of

2    California, Inc. is a California corporation and AT&T Corp., a

3    corporation incorporated under the laws of the State of New York.

4          3.     Defendants/Counterclaimants are, among other

5    things, interexchange carriers that provide interstate and

6    intrastate interexchange service throughout the United States.

7          4.     Defendants/Counterclaimants have disputed

8    Plaintiff/Counterdefendant's current and past invoices.

9    B.   Contested Facts.

10         1.     Pac-West submits that its invoices to AT&T

11   accurately reflect the tariffed services it provides to AT&T, and

12   have always done so.

13         2.     Prior to AT&T's current manufactured dispute, AT&T

14   made regular monthly payments to Pac-West for the same traffic at

15   issue in this case for several years.  During the week of April

16   19, 2010, however, AT&T notified Pac-West that it had received

17   complaints concerning possible fraudulent calls to its toll-free

18   subscriber customers.  Pac-West began an immediate investigation

19   of AT&T's allegations and by Monday, April 26, 2010, Pac-West had

20   identified two customers it determined were responsible for the

21   traffic AT&T alleged was fraudulent and terminated its provision

22   of local exchange service to these entities.  Although the

23   traffic generated by these two entities was an insignificant

24   percentage of the total traffic at issue in this case, AT&T

25   informed Pac-West that it would be withholding all of Pac-West's

26   invoiced charges for the month of April, 2010.

27         3.     Since that time, AT&T has only belatedly and in a

28   piecemeal fashion indicated exactly what charges AT&T was

                                    6

disputing and proceeded to unilaterally recalculate Pac-West's invoices based on what AT&T considered a fair rate for the inputs necessary to provide its long-distance service.  For certain categories of traffic in which AT&T competes directly with Pac-West, however, AT&T has unilaterally set a rate of zero for the inputs Pac-West provides and therefore refuses to compensate Pac-West at all in order to gain an unfair advantage for its competing service offering.

4.    The originating and terminating access traffic that Pac-West has invoiced to AT&T utilize industry-standard routing practices.  While AT&T tries to vilify these standard routing practices, these are 8YY and other routing arrangements that, upon information and belief, AT&T and its CLEC and wireless affiliates have utilized for years.  Further, AT&T's local exchange carrier affiliates demand access charges for the same access services that Pac-West is providing to AT&T, regardless of what protocol is utilized in transmitting a particular call, whether it be VoIP or the older Time Division Multiplexing ("TDM") protocol.  AT&T's local exchange carrier has argued in cases across the country that access charges must apply to similar traffic.  On information and belief, AT&T also compensates other LECs with which it has reached sweetheart deals for the very same traffic in dispute here at much higher rates, but refuses to share this information with Pac-West.

5.    Pac-West has billed AT&T switched access charges purportedly pursuant to its interstate and intrastate switched access tariffs, and thus must demonstrate that it did, in fact provide switched access services to AT&T pursuant to such

tariffs.  There are several factual inquiries involved in this
determination, including the nature of the traffic at issue,
whether the traffic was routed to or from an "end user
subscriber[]" within the meaning of Pac-West's tariffs, and
whether the traffic was routed over Pac-West's "local exchange
circuits" within the meaning of its tariffs.  Further, because
Pac-West's interstate switched access tariff, prior to its June
2010 revisions, incorporated the switched access tariffs of
several other carriers, Pac-West must demonstrate that it
provided switched access service to AT&T pursuant to each of
these tariffs as well, which will require additional factual
inquiries.

     6.    For example, under one such tariff incorporated by
reference in Pac-West's tariff, Pacific Bell Telephone Company
Tariff F.C.C. No. 1, Pac-West must demonstrate that the traffic
at issue (1) originated from or was terminated to an "end user,"
(2) at an "end user's premises," (3) over "common . . .
facilities," and (4) within Pac-West's local exchange territory.
Each of these determinations will require findings of fact,
including Pac-West's relationship with the purported end-users;
the services, if any, Pac-West provided to the purported end
users; any payments exchanged between Pac-West and the purported
end users; the physical location of the purported end users; and
the call routing for the traffic at issue, including the
facilities and equipment used to transmit such traffic.

     7.    Further, there are factual issues as to the volume
of fraudulent "re-originated" traffic; the volume of traffic
delivered to international destinations; the volume of traffic

8

1  from or to customers of VoIP providers; and the volume of traffic
2  Pac-West determined to be jurisdictionally interstate and
3  intrastate, and how Pac-West made such determinations.

4      8.   Pac-West, as the purported provider of the
5  switched access services at issue, is the primary source of the
6  information needed to resolve these factual inquiries.  Pac-
7  West's tariffs, Pac-West's services, Pac-West's call routing, and
8  Pac-West's relationships are at issue, and none of the matters in
9  dispute in the pleadings involve AT&T's local exchange carrier
10  affiliates.  AT&T raised its concerns with Pac-West and requested
11  information that would support Pac-West's switched access
12  charges; however, Pac-West refused to provide AT&T with details
13  that could be used to determine these facts.  Thus, based on the
14  information available to it, AT&T concluded that Pac-West was not
15  providing the switched access service for which it was billing
16  AT&T, and that it would withhold payment of the disputed charges
17  as permitted by Pac-West's tariffs.  Discovery of Pac-West
18  concerning the factual disputes above is thus essential to
19  resolving this case.
20  VI.  Legal Issues.

21      A.   Uncontested.

22      1.   Jurisdiction exists under 28 U.S.C. § 1331 and 47
23  U.S.C. §§ 151, et seq.  Jurisdiction is also invoked under 28
24  U.S.C. § 1367.

25      2.   Venue is proper under 28 U.S.C. § 1391.

26      3.   As to supplemental claims, including a Business &
27  Professions Code §17200 claim asserted by AT&T, the substantive
28  law of the state of Arizona, California, Colorado, Idaho, Nevada,

9

1  Oregon, Texas, Utah and Washington provide the rule of decision.

2       B.   Contested.

3            1.   AT&T has asserted various legal arguments to

4  excuse its unlawful refusal to pay Pac-West's tariffed access

5  charges as invoiced.  AT&T's first argument is that Pac-West's

6  tariffs are void because they contain cross-references to other

7  carriers' tariffs.  Pac-West submits that AT&T's argument in this

8  regard is without merit, as it ignores the applicable FCC

9  tariffing regulations for non-dominant carriers that expressly

10 permit carriers like Pac-West to cross-reference dominant

11 carriers' tariffs, and further ignores controlling precedent

12 holding that AT&T does not have a private right of action to seek

13 relief from this Court based on the (inapposite) tariffing

14 regulations on which AT&T relies.  In any case, Pac-West's

15 tariffs, and the rates, terms and conditions contained in those

16 tariffs, comply with all applicable federal and state

17 regulations.

18           2.   AT&T further objects to other artificial

19 subcategories of traffic that Pac-West handles on behalf of AT&T,

20 such as toll-free "re-originated" traffic or traffic that is

21 initiated by VoIP end users.  AT&T relies upon distinctions

22 without a difference in terms of whether a particular subset of

23 telecommunications traffic is compensable under Pac-West's

24 applicable tariff.  In addition, AT&T, for much of Pac-West's

25 traffic, does not content itself with substituting its own rate

26 for Pac-West's tariffed rates, itself a form of illegal self-

27 help, but jumps to the unsupportable conclusion that access

28 services for such traffic are free of charge.

1     3.   AT&T, moreover, has refused to abide by the

2 dispute-resolution provisions of Pac-West's tariffs.  For

3 example, Pac-West's California intrastate access tariff requires

4 a carrier-customer to dispute any charges billed pursuant to that

5 tariff within ninety days, which AT&T failed to do.

6     4.   Equally irrelevant is AT&T's characterization of

7 Pac-West's commercial relationships with some of its customers.

8 AT&T asserts that Pac-West treats certain of its customers, such

9 as VoIP providers, as business partners rather than as bona fide

10 customers, which, according to AT&T, disqualifies these entities

11 as "end-users" under Pac-West's tariffs.  Pac-West's contracts

12 with these customers, however, comply with federal and state

13 regulations, and in no way alter or affect the access services

14 that Pac-West provides to AT&T.  This is but another example of

15 AT&T attempting to obfuscate through name-calling the simple fact

16 that Pac-West has provided, and continues to provide, AT&T with

17 the switched access services, as defined in Plaintiff's tariffs,

18 that enable AT&T to provide its for-profit long-distance

19 services, and that AT&T is improperly trying to co-opt those

20 services without due compensation.

21     5.   Pac-West is not permitted to engage in fraudulent

22 and unlawful schemes to extract payments from AT&T for switched

23 access services that Pac-West has not provided.  Pac-West has

24 billed AT&T switched access charges purportedly pursuant to its

25 interstate and intrastate switched access tariffs, and thus must

26 demonstrate that it did provide switched access services to AT&T

27 pursuant to such tariffs.  The validity, applicability, and

28 interpretation of Pac-West's tariffs are disputed questions of

11

1  law.   Whether Pac-West provided switched access service to AT&T

2  pursuant to its tariffs also involves questions of law.

3  Additionally, whether Pac-West has violated the Communications

4  Act, the FCC's rules and federal and state law, by billing and

5  collecting switched access charges for the traffic at issue,

6  presents questions of law.

7        6.   Pac-West's tariffs are invalid for several

8  reasons, including, for example, because the tariffs do not

9  specify the rates applicable to the switched access services

10  purportedly provided to AT&T, which constitutes a violation of

11  Section 203 of the Communications Act, 47 U.S.C. § 203.

12  Moreover, even if its tariffs were valid, Pac-West must

13  demonstrate that it provided switched access services to AT&T

14  pursuant to such tariffs, which will require Pac-West to

15  demonstrate, *inter alia*, that the traffic at issue was routed to

16  or from an "end user" and an "end user's premises," as those

17  terms are defined in its tariffs.   Further, in order to prevail

18  Pac-West must avoid a finding that it violated the Communications

19  Act and other federal and state law by engaging in fraudulent and

20  unlawful schemes and by billing AT&T for switched access services

21  it did not provide.

22  VII. Consent to Magistrate Judge Jurisdiction.

23        1.   The parties have not consented to transfer the

24  case to the Magistrate Judge for all purposes, including trial.

25  VIII.      Corporate Identification Statement.

26        1.   Any nongovernmental corporate party to any action in

27  this court shall file a statement identifying all its parent

28  corporations and listing any entity that owns 10% or more of the

1   party's equity securities.  A party shall file the statement with

2   its initial pleading filed in this court and shall supplement the

3   statement within a reasonable time of any change in the

4   information.

5   IX.   Discovery Plan and Cut-Off Date.

6       1.   The parties have agreed to conduct discovery within the

7   limits imposed by the Federal Rules of Civil Procedure.  AT&T

8   anticipates that it may need to take discovery outside of the

9   United States, which could consist of requests for production of

10  documents or depositions.  AT&T also anticipates that it may

11  utilize video recording of depositions.  The parties will

12  negotiate and agree upon an appropriate protective order for the

13  discovery materials that will be produced and exchanged in this

14  case.

15      2.   Discovery relating to electronic, digital, and/or

16  magnetic data:

17          a.   Notification of intent to seek electronically

18  stored information:  Each party expressed its intent to seek

19  electronically stored information, as well as to identify the

20  categories of such information.

21          b.   Plaintiff/Counterdefendant intends to seek the

22  following categories of electronically stored information:

23              i.   Electronically stored documents and

24  information, as defined in Fed. R. Civ. P. 34(a)(1)(A),

25  including, without limitation, e-mails, word processing

26  documents, spreadsheets, databases, and PDFs;

27              ii. Exchange Message Interface ("EMI") records,

28  Call Detail Records ("CDRs"), and any electronically stored

13

1  documents, data, or information derived from such records;

2          iii. Electronically stored data or other
3  information used in the course of calculating or creating
4  invoices;

5          iv.  Electronically stored financial and
6  accounting data or other information relevant to the damages
7  claimed by AT&T in this litigation;

8          v.   Electronically stored financial and
9  accounting data or other information relevant to the revenues and
10 profits AT&T earns for the traffic at issue in this case;

11         vi.  Electronically stored financial and
12 accounting data or other information relevant to the rates paid
13 by AT&T to other carriers for services comparable to those Pac-
14 West provides to AT&T.

15     c.   Defendants/Counterclaimants intend to seek the
16 following categories of electronically stored information:

17         i.   Electronically stored documents and
18 information, as defined in Fed. R. Civ. P. 34(a)(1)(A),
19 including, without limitation, e-mails, word processing
20 documents, spreadsheets, databases, and PDFs;

21         ii.  Exchange Message Interface ("EMI") records,
22 Call Detail Records ("CDRs"), and any electronically stored
23 documents, data or information derived from such records;

24         iii. Electronically stored data or other
25 information used in the course of calculating or creating
26 invoices;

27         iv.  Electronically stored financial and
28 accounting data or other information relevant to the damages

14

1   claimed by Pac-West in this litigation.

2            c.   Conferral Regarding Electronically Stored
3   Information:   The parties have conferred regarding the following
4   matters during the Rule 26(f) conference:

5                 i.   Computer-based Information:   The parties have
6   conferred and presented to each other that litigation hold
7   notices have been sent to the appropriate officers and employees
8   within their respective organizations, which the parties have
9   agreed will be sufficient to avoid accusations of spoliation.

10                ii.   E-mail Information:   The parties have
11  conferred regarding e-mail relevant to claims and defenses at
12  issue in this litigation and have agreed to work together to
13  develop mutually agreeable search terms to capture such
14  information.

15                iii. Deleted Information:   The parties do not
16  anticipate the need to restore deleted information, except for
17  information that is readily accessible, such as from a "Recycle
18  Bin," "Deleted Items" folder, or comparable location on a user's
19  computer.

20                iv.   Back-up Data:   The parties do not anticipate
21  the need for discovery of any back-up data.

22       The Court orders:

23       1.   The parties shall make their initial disclosures on or
24  before November 1, 2010.

25       2.   Mid-discovery conference reports shall be filed on or
26  before February 14, 2011.

27       3.  A mid-discovery status conference shall be held on
28  February 18, 2011, at 8:15 a.m. in Courtroom 3.  The parties are

15

1  authorized to appear telephonically.

2      4.   The parties are ordered to complete all non-expert

3  discovery on or before April 11, 2011.

4      5.   The parties are directed to disclose all expert

5  witnesses, in writing, on or before May 9, 2011.  Any rebuttal or

6  supplemental expert disclosures will be made on or before June 6,

7  2011.  The parties will comply with the provisions of Federal

8  Rule of Civil Procedure 26(a)(2) regarding their expert

9  designations.  Local Rule 16-240(a) notwithstanding, the written

10 designation of experts shall be made pursuant to F. R. Civ. P.

11 Rule 26(a)(2), (A) and (B) and shall include all information

12 required thereunder.  Failure to designate experts in compliance

13 with this order may result in the Court excluding the testimony

14 or other evidence offered through such experts that are not

15 disclosed pursuant to this order.

16     6.   The parties are ordered to complete all discovery,

17 including experts, on or before July 1, 2011.

18     7.   The provisions of F. R. Civ. P. 26(b)(4) shall

19 apply to all discovery relating to experts and their opinions.

20 Experts may be fully prepared to be examined on all subjects and

21 opinions included in the designation.  Failure to comply will

22 result in the imposition of sanctions.

23 X.   Pre-Trial Motion Schedule.

24     1.   All Non-Dispositive Pre-Trial Motions, including any

25 discovery motions, will be filed on or before July 20, 2011, and

26 heard on August 26, 2011, at 9:00 a.m. before Magistrate Judge

27 Gary S. Austin in Courtroom 10.

28     2.   In scheduling such motions, the Magistrate

16

Judge may grant applications for an order shortening time
pursuant to Local Rule 142(d).  However, if counsel does not
obtain an order shortening time, the notice of motion must comply
with Local Rule 251.

3.    All Dispositive Pre-Trial Motions are to be
filed no later than August 1, 2011, and will be heard on
September 26, 2011, at 10:00 a.m. before the Honorable Oliver W.
Wanger, United States District Judge, in Courtroom 3, 7th Floor.
In scheduling such motions, counsel shall comply with Local Rule
230.

XI.  Pre-Trial Conference Date.

1.    October 31, 2011, at 11:00 a.m. in Courtroom 3, 7th
Floor, before the Honorable Oliver W. Wanger, United States
District Judge.

2.    The parties are ordered to file a Joint Pre-
Trial Statement pursuant to Local Rule 281(a)(2).

3.    Counsel's attention is directed to Rules 281
and 282 of the Local Rules of Practice for the Eastern District
of California, as to the obligations of counsel in preparing for
the pre-trial conference.  The Court will insist upon strict
compliance with those rules.

XII. Motions - Hard Copy.

1.    The parties shall submit one (1) courtesy paper copy to
the Court of any motions filed.  Exhibits shall be marked with
protruding numbered or lettered tabs so that the Court can easily
identify such exhibits.

XIII.  Trial Date.

1.    December 13, 2011, at the hour of 9:00 a.m. in

17

1    Courtroom 3, 7th Floor, before the Honorable Oliver W. Wanger,

2    United States District Judge.

3         2.    The parties have demanded jury, but anticipate trying

4    the case without a jury.

5         3.    Counsels' Estimate Of Trial Time:

6              a.    Five days.

7         4.    Counsels' attention is directed to Local Rules

8    of Practice for the Eastern District of California, Rule 285.

9    XIV. Settlement Conference.

10        1.    A Settlement Conference is scheduled for July 5, 2011,

11   at 10:00 a.m. in Courtroom 10 before the Honorable Gary S.

12   Austin, United States Magistrate Judge.

13        2.    Unless otherwise permitted in advance by the

14   Court, the attorneys who will try the case shall appear at the

15   Settlement Conference with the parties and the person or persons

16   having full authority to negotiate and settle the case on any

17   terms at the conference.

18        3.    Permission for a party [not attorney] to attend

19   by telephone may be granted upon request, by letter, with a copy

20   to the other parties, if the party [not attorney] lives and works

21   outside the Eastern District of California, and attendance in

22   person would constitute a hardship.  If telephone attendance is

23   allowed, the party must be immediately available throughout the

24   conference until excused regardless of time zone differences.

25   Any other special arrangements desired in cases where settlement

26   authority rests with a governing body, shall also be proposed in

27   advance by letter copied to all other parties.

28        4.    Confidential Settlement Conference Statement.

18

1   At least five (5) days prior to the Settlement Conference the
2   parties shall submit, directly to the Magistrate Judge's
3   chambers, a confidential settlement conference statement.  The
4   statement should not be filed with the Clerk of the Court nor
5   served on any other party.  Each statement shall be clearly
6   marked "confidential" with the date and time of the Settlement
7   Conference indicated prominently thereon.  Counsel are urged to
8   request the return of their statements if settlement is not
9   achieved and if such a request is not made the Court will dispose
10  of the statement.

11       5.   The Confidential Settlement Conference
12  Statement shall include the following:

13            a.   A brief statement of the facts of the
14  case.

15            b.   A brief statement of the claims and
16  defenses, i.e., statutory or other grounds upon which the claims
17  are founded; a forthright evaluation of the parties' likelihood
18  of prevailing on the claims and defenses; and a description of
19  the major issues in dispute.

20            c.   A summary of the proceedings to date.

21            d.   An estimate of the cost and time to be
22  expended for further discovery, pre-trial and trial.

23            e.   The relief sought.

24            f.   The parties' position on settlement,
25  including present demands and offers and a history of past
26  settlement discussions, offers and demands.

27  ///
28  ///

19

1  **XV.   Request For Bifurcation, Appointment Of Special Master,**
2  **Or Other Techniques To Shorten Trial.**

3       1.   The parties do not believe bifurcation or phasing is
4  necessary.

5       2.   The parties reserve the right to determine whether
6  presentation of Plaintiff's witnesses at the same trial would
7  advance the interest of justice and the parties.

8  **XVI. Related Matters Pending.**

9       1.   Plaintiff/Counterdefendant indicated to Defendants/
10 Counterclaimants that it intends to seek consolidation of this
11 case with the following related case: *Pac-West Telecomm, Inc. v.*
12 *MCI Communications Services, Inc. d/b/a Verizon Business*
13 *Services*, 1:10-cv-1051 OWW GSA (E.D. Cal.).  Plaintiff/
14 Counterdefendant submits that both actions involve similar
15 questions of fact and the same questions of law, and their
16 consolidation is likely to achieve a substantial savings of
17 judicial effort.

18      2.   Defendants/Counterclaimants intend to oppose
19 consolidation of these cases, each of which was filed separately
20 by Plaintiff/Counterdefendant.  Defendants/Counterclaimants do
21 not object to coordinating discovery with the related case, and
22 have no objection to these cases being heard by the same District
23 Judge and Magistrate Judge.

24 **XVII.     Compliance With Federal Procedure.**

25      1.   The Court requires compliance with the Federal
26 Rules of Civil Procedure and the Local Rules of Practice for the
27 Eastern District of California.  To aid the court in the
28 efficient administration of this case, all counsel are directed

1  to familiarize themselves with the Federal Rules of Civil
2  Procedure and the Local Rules of Practice of the Eastern District
3  of California, and keep abreast of any amendments thereto.
4  XVIII.      Effect Of This Order.
5      1.    The foregoing order represents the best
6  estimate of the court and counsel as to the agenda most suitable
7  to bring this case to resolution.  The trial date reserved is
8  specifically reserved for this case.  If the parties determine at
9  any time that the schedule outlined in this order cannot be met,
10  counsel are ordered to notify the court immediately of that fact
11  so that adjustments may be made, either by stipulation or by
12  subsequent scheduling conference.
13      2.    Stipulations extending the deadlines contained
14  herein will not be considered unless they are accompanied by
15  affidavits or declarations, and where appropriate attached
16  exhibits, which establish good cause for granting the relief
17  requested.
18      3.    Failure to comply with this order may result in
19  the imposition of sanctions.

21  IT IS SO ORDERED.

22  Dated:   October 7, 2010            /s/ Oliver W. Wanger
                                     UNITED STATES DISTRICT JUDGE

21